On our docket today, Schedule IV Oral Argument, we have two cases that have been submitted on the briefs. Our first case is Downhole Pipe & Equipment v. U.S. Counsel Ready? Mr. Lenhart? Your Honors, good morning. My name is Mark Lenhart. I represent Downhole Pipe & Equipment and DP Master Manufacturing. Our briefs contain several arguments, all of which are meritorious and deserving of your attention. But in my presentation, I'd like to focus on two dispositive aspects of the arguments. First, regarding the $5,000 surrogate value for Green Tube, key comparisons found on page 13 of our reply brief that established that no reasonable mind could conclude that Commerce selected the best available information. On page 56 of the blue brief, Downhole says, Commerce's statement that record evidence demonstrates that P110 and J slash K55 OCTG cannot be used to produce drill pipe is simply wrong and that either P10 or J slash K55 with proper chemistry could be used to produce a drill pipe. Where are the record examples of this being done in the industry? There are no concrete examples on the record, but in the – So it's attorney argument and nothing else? Not exactly, Your Honor. In the 2002 and in the ITC's investigation of OCTG from several countries, in those proceedings, the Green Tube producers argued to the ITC that Green Tube was a commodity product and essentially could be used interchangeably at the Green Tube stage. So the essence of your argument is that Green Tube can't fall into two different categories. Is that right? Well, the Green Tube for oil country tubular goods, which includes casing tubing and drill pipe, is essentially the same. You have different requirements for different types of drill pipe oil casing and tubing, but these requirements overlap among the different products there. They overlap, but they're not the same, are they? They are the same in many instances. In terms of – there are two instances here. One is the API standards, which is the industry standards. And in those, there are direct overlap with all the three criteria in the Commerce's scope for at least half of the API standards. But the scope isn't just API standards. It's also proprietary standards. So the overlap is much wider than that. Didn't Commerce in this case take steps to make sure that there was no overlap with the existing orders? That's what they say, Your Honor, but what they did was invalid. And it goes to the definition of oil country tubular goods and the language in the scope. Oil country tubular goods includes drill pipe, casing, and tubing. In the OCTG from China order and investigation, the petitioners in their petition requested that the scope language say OCTG including only casing and tubing. But Commerce did not include that limiting language in the scope. Commerce in the initiation and in the final scope language says OCTG including casing and tubing. The scope language also includes unfinished OCTG including green tube and only specifically excludes drill pipe. It does not exclude unfinished drill pipe, which is green tube used to produce oil country tubular goods, drill pipe, casing, and tubing. But in this case, Commerce defined the scope as not including any unfinished tubes for casing or tubing covered by any other anti-dumping or countervailing duty orders. Sure, but the problem with that is, and if you'll excuse the simplicity of this analogy, it's like saying that there is an anti-dumping order against rectangles from China. And then Commerce begins a new investigation of squares and triangles from China, excluding any squares covered by a previous order. All squares are rectangles, and you can't carve that out of the rectangle order, just like you can't carve out a drill pipe green tube from an order that covers green tube for all oil country tubular goods. Well, you don't have any problem then because if it's a total overlap, your objection is valid and you don't have any problem, right? Well, the difficulty is that when green tube is included in the scope and in the calculation of industry support, then the industry support calculation is off. For Commerce to initiate an investigation, it requires at least 25% of the domestic industry by volume supporting the petition. And when the production volume for green tube is excluded from the industry support order, you don't see the same result from the calculation as Commerce had when it initiated the order. So even if we were to find in your favor, are you saying that there's authority to go back and that this would affect the standing decision of ITC? I'm not sure what you understand. I'm not sure I understand what you mean by the standing. Well, industry support. Yes. You use industry support to establish standing, correct? You bring a petition? Sure, sure. Okay, that's what I'm talking about. Yeah, there's authority. The industry support argument, when that is the issue, then we're arguing about it after the order is in place, but the result is from the beginning. The statement of administrative action. Aren't those two separate distinct determinations? I see the link, but aren't they distinct? No, they are distinct. I mean the Department of Commerce is going to establish the domestic industry, and then the ITC is looking at the like product, or the domestic product and the like product. But the domestic industry support calculation and determination is solely with the Department of Commerce. Regarding the green tube surrogate value, the basic principle here is that an input should not be valued higher than the finished product. On page 13 of the reply brief, it lists, it has a table with several of the alternate surrogate values on the record, and also petitioners, or the average unit value of petitioners 2006 to 2008 finished drill pipe prices. And what you see here is the $5,000 surrogate value for the green tube input compares to, among other things, the $2,500 Indian HTS category for finished drill pipe. I'm sorry, what page did you say? This is page 13 of the reply brief. Okay. Here, that comparison shows that Commerce has valued the input at double the value of the finished product, considering also that uncontroverted industry expert testimony on the record establishes the value of green tube at 30 percent of the value of the finished product. That comparison then becomes even more stark when looking at the $5,000 value of the green tube surrogate value and the $2,500 value of the Indian HTS category for finished drill pipe. The comparison with petitioners AUV for finished drill pipe contrasts similarly. With these numbers… The CIT says your argument in this area is, I think, entirely conjectural. Well, the conjectural argument, I believe, was in relation to the National Import Specialist memo by the Department of Commerce. But what the court said in relation to the green tube surrogate value in this comparison with the HTS category for finished drill pipe is that Commerce had adequately addressed our argument about the disparity in the values by establishing that there was more than just finished drill pipe in the Indian HTS category. But that analysis does not address how the Indian HTS category can be used in terms of a reference point for the value of green tube. The petitioners – well, let me begin with the Department of Commerce. They argue that… Best available information. The best available information is the standard, but the Department of Commerce argued that we could not compare the $5,000 SUV with – excuse me, the $5,000 SUV with the petitioners' average unit values of their finished drill pipe prices because that information is not public. But the regulation they rely upon only relates to surrogate value selected, not to information that is used to assess the reasonability of a surrogate value. And it only expresses a preference, saying that the Secretary normally will use public information. Petitioners have a more direct argument about the Indian HTS category and the value there. They say that the value is dragged down by non-finished drill pipe products or non-drill pipe products, and so it's no longer usable as a comparison. But the math simply doesn't work out there. The record – or evidence on the record establishes that at least half of the entries in the Indian HTS category for drill pipe include semi-finished drill pipe and finished drill pipe. Now, in regards to semi-finished drill pipe, the uncontroverted industry expert set the value of green tube at about 60% of the value. So for unfinished or semi-finished drill pipe, it would require a 40% reduction to get to the value of green tube. With finished drill pipe, it's a 70% reduction on the value. And what you have then is essentially about a 50 or so reduction in the value of just the semi-finished and finished drill pipe. Mr. Leonard, are the price points for finished drill pipe public information? Not for petitioners' AV of finished drill pipe, no. Then why was AV appropriate for Commerce to consider in this calculation? They're absolutely appropriate to consider as a reference point to assess the reasonability of the surrogate value selected. Just using it as a comparison is not going to make that information public. Well, if we were to assume the most extreme circumstance or hypothetical with petitioner's argument that the remaining 50% of the entries under the Indian HTS category for drill pipe, if their value was zero, then that would essentially be a 50% reduction in the prices or the average unit value of the semi-finished and finished drill pipe. That is essentially equivalent to the downward adjustment that would be required. So what the Indian finished drill pipe category does is establish the extreme ceiling or reasonable value of green tube. And thus, when you compare with the $5,000 surrogate value, that's double what the extreme ceiling could be. Because no reasonable mind could conclude that the $5,000 remand surrogate value is the best available information, this Court should remand to Commerce to select a reasonable surrogate value. Ms. Cotet? Ms. Cotet, thank you. You're okay. Okay, thank you. May it please the Court. I'll address the scope argument first, as I think everything flows from that. Oh, you're not going to make flow jokes, are you? No, Your Honor. Thank you. But this will now flow better because of the joke. May it please the Court. Counsel is absolutely correct that OCTG, oil, country, tubular goods, actually encompasses casings and tubings, as well as drill pipes. However, within the industry, as well as within the harmonized tariff schedules utilized by subscribing nations, those two categories of OCTG are separate and distinct. And the green tube that is used for those two categories, the greater heading of OCTG, are separate and distinct as well. They're separate and distinct in mechanical properties, chemical properties, physical dimension, and as well as their ultimate end use. In which case, the original order that pertains to OCTG casings and tubing, and in parentheses, an unfinished OCTG, including green tube, refers to green tube used for the casings and tubing covered by that order. Those green tubes would not be used to manufacture or produce green tube used for drill pipes. So, unfinished drill pipe, which is covered by the drill pipe order, is different than the unfinished OCTG covered by the OTCG order. In which case, the two orders are actually separate and distinct and cover separate products. Well, given the fix that the agency plugged in, which was to say, okay, we're excluding everything from the prior order, I don't see the problem anyway. Thank you, Your Honor. And that was done to ensure that there were no problems, no overlap. While Downhole Pipe and DP Master have presented the court with a couple of OCTG products that have certain of the characteristics of green tube for drill pipes, not one of them contains all characteristics. So, there's no overlap here with respect to the order. And if there's no overlap with respect to the products covered by the two separate and distinct orders, there can be no issue regarding industry support. It need not be revisited at all. Now, with respect to the aberrantly high value that DP Master and Downhole attribute to the AUV or the SV for subheading 7304-5990, I apologize. All the numbers are swirling in my head. And this is under the Indian HTS, right? You're correct, Your Honor. But on the six-digit level, there's no distinction between the Indian HTS and the U.S. HTS. They are the same at that level. There is a difference between the Indian... That doesn't mean they include the same product, correct? At the six-digit level, that's what that should mean. Because the Harmonized Tariff Schedule was designed to permit traders throughout the world to know what they're trading and where, certainly at the six-digit international level, those goods would be categorized. Now, distinctions occur at the eight-digit level. So, there is one thing that we're certain of here. There is no dispute that green tube for drill pipe is not drill pipe. It's simply not drill pipe. It is not unfinished drill pipe of the kind that could be categorized with the finished drill pipe. And that's because it doesn't have the essential characteristics of the finished product. And so, green tube for drill pipe cannot be categorized with the unfinished product that has the same characteristics as the end product or the end product itself. Can you address the argument that your opponent is making with respect to domestic industry support? Pardon me, Your Honor? Domestic industry support? For... I apologize, Your Honor. I didn't understand the question. With respect to the scope or with respect to classification or categorization of these goods within... The argument is that once the green tube is excluded from the anti-dumping duty order, that you've got to go back and you've got to fix the industry support determinants. Well, Your Honor had asked a question regarding standing, and this court has previously held that commerce has broad discretion with respect to determining standing. Here, the industry support for the green, drill pipe green tube was, or for drill pipe, was from drill pipe producers as well as those people who purchase green tube and ultimately produce it. There... I don't believe that there's any reason to... The green tube from the anti-dumping duty order, does that affect or should it affect the domestic industry support determination that was made? The answer to that... And specifically, the requirement to achieve a certain domestic support in order to bring a petition? No. I don't believe so, Your Honor. Well, it depends what you mean by green tube. Well, and that's what I thought I had addressed up front, and I apologize, Your Honor, because I thought I had addressed that earlier on. Here... Your answer that commerce's identification of three physical characteristics, distinguishing them, automatically segregates the one green tube from the other green tube within the scope determination? That is precisely the argument that we're making to the court today, in which case, there's no disruption with respect to the industry support. There's no overlap between the two orders. And so, even still, commerce would have had broad discretion in determining industry support to begin with. And here, they have almost the entirety of the drill pipe industry within the United States encompassed as petitioners. So, I'd like to conclude, because I only have 30 seconds, 35 seconds left here, with the apparently high argument. The apparently high argument is actually a false comparison, because you have to assume that those numbers are accurate. There's actually no reliable information within the record to demonstrate that the numbers 5,000 or 2,500 are actually accurate for purposes of comparing them to each other. And for all these reasons, Your Honor, we would... Your Honor, we would request that you affirm commerce's reasonable determination here that was based on the best available information. Thank you. Mr. Chagrin, you have seven minutes. Yes, thank you, Your Honors. May it please this honorable court, I'm Roger Chagrin of Chagrin Associates on behalf of Van Drilling et al. Let me just start with the standing issue. I don't think that there's really any issue of controversy before this court as to whether commerce properly, by the time it issued its final scope definition in the drill pipe case, made sure that there was absolutely no overlap with the oil country tubular goods case. If we alter the scope of an anti-dumping duty order, can we go back and look at the support determination and change that as well? I don't believe so, and that's why I want to address that, Your Honor. And that is because, as this court is well aware, scope is not only set initially in the filing of the petition by the petitioners and in commerce's initiation, which is the only time they determine industry support, but even after a final scope is established in an anti-dumping duty order, it is often refined further through scope clarification requests, through scope circumventions. And if this court were to adopt the request by plaintiff here, you would set up a new precedent that commerce should have to constantly go back and determine industry support as scope evolves. And I believe the law is quite clear that commerce has an obligation to determine whether there is sufficient industry support to initiate a petition based upon the scope at the time of commerce's initiation. To rule otherwise is to open up an endless series of arguments over industry support. I happen to know, having represented more than half the industry in this case and more than half in the OCDG cases, in fact, in this particular case, the issue would be moot anyway. But that's not really the issue before the court. The issue before the court as a legal issue is, should you make a finding that commerce needs to always revisit industry standing every time it makes any clarification of scope after initiation? And I think for ample public policy reasons, as well as the way the statute is set up, that this court should not make that motion. Is there any case – there's a relatively narrow body of scope case law within there. Is there any case that does – we do go back and look, but is there any that goes back and looks after the fact? Your Honor, we've researched that. We didn't find any. Neither did I. Industry support issues were revisited after either the courts, which has happened many times, or sometimes the parties or the agency itself changed scope language. So it's really a novel argument. I think as the basis, and I think counsel from the Department of Justice did an excellent job on this, there is no overlap in the end between these scopes. And I think commerce did a sufficient job of clarifying that by excluding any green tube for OCDG and by putting in these… Could you address the surrogate value issue? I'm sorry? Yes, I would love to, Your Honor. And that is really what Downhole is arguing, is that they just want a lower surrogate value. Remember the status of this case below. The CIT found that the initial choice of surrogate value by commerce was not supported by substantial evidence, was not sufficiently explained. Let's assume that you have only the green tube that's going into that particular Indian classification. Isn't that aberrantly high, the average unit value that's in there? No, Your Honor. I would agree with the final comment made by counsel for defendant that in order to determine whether something's aberrant, you have to have the possibility of having other good choices to compare it to. And here on remand, commerce didn't say, let me pick which surrogate value is best, which is what plaintiff wanted. Instead, commerce went to the national import specialist for customs and said, we want to use your expertise to figure out for this product with these chemistries, an alloy seamless product that isn't finished, what's the best HTS? Remembering that the harmonized tariff system at the six-digit level is the same worldwide. Well, the import specialist, it appears to me that all she did was confirm that dural pipe green tubes would be classified under that particular Indian tariff classification. I believe, Your Honor, she also said they wouldn't be classified in other classifications. But that doesn't address the value, the average unit value. And that wasn't the interest of the NIS. And I really don't think it was the interest of commerce to say which value is the best value. What they want to do is decide which is the best surrogate value to choose based on all their issues. That duty doesn't end at just selecting among known quantities or pricing. It extends, doesn't it? I mean, they cannot pick something that's totally unreasonable. That is correct, Your Honor. And that's why I think in their decision they did an excellent job. They actually had more times doing this on remand than they did in the original investigation. And so they considered and dismissed, as did the court below, each and every alternative posited by the plaintiffs. And they said all of these other five alternatives put forth are not as good as the one we have chosen. And they gave very detailed reasoning. In any case, isn't this an invitation to reweigh evidence? This is just an invitation to reweigh the evidence. I think, to be honest, in case after case involving China, this issue of choosing the best surrogate value is inherently the most difficult one for the agency to make. We are looking at the case from a de novo point of view. Yes, I understand that, Your Honor. And we're looking at the evidence to see if the evidence is supported, right? Correct. And I think you should find here that the evidence is supported, and yet you should not reweigh the evidence. You should see did Commerce give to the court below and to you a sufficient, substantial evidence basis for the choice that they made. And I submit to you that's really your standard of review, not whether there could be substantial evidence for any of the other choices that plaintiff has posited. You're out of time. Do you have a concluding thought? I would just ask that you uphold the Department's remand determination. Thank you. Thank you, Your Honors. Mr. Lindner, you have five minutes. Thank you, Your Honor. There are just three points I'd like to make on rebuttal. One, regarding the false comparisons that the Department of Commerce has argued. Two, regarding the petitioner's argument about floodgates. And three, regarding Commerce's argument there are just a couple of overlaps. Regarding the false comparisons, the Department of Commerce and petitioners argue that there is no accurate value that can be used as a reference point. But I reiterate the argument about the math regarding Indian HTS category for finished drill pipe and petitioner's AUV for their finished drill pipe prices, which although can't be used necessarily as a surrogate value, they can be used to assess the reasonability of Commerce's selection. Petitioner conceded that the Department of Commerce cannot select an unreasonable surrogate value. And regarding Your Honor's question about reweighing the evidence, the court has limited ability to reweigh evidence. And that is on the standard that whether a reasonable mind could conclude that Commerce selected the best available evidence. And it's that standard which we argue. Regarding the floodgates, excuse me, and Your Honor's question about can we go back, there are two cases that talk about this. SAVE Domestic Oil and PT Pindodeli. In SAVE Domestic Oil, the scope was revisited, was altered, and the industry support was changed. And in PT Pindodeli, the court said that an argument about the industry support was possible, but in that case, the plaintiff had not raised the argument timely in the investigation. Finally, the Department of Commerce's argument that there are just a couple of overlaps and there is no casing or tubing green tube that satisfies all three criteria, that argument is wrong for the reasons that we have expressed in our brief and is wrong for at least 54 green tubes for oil country tubular goods just based on the generic API industry standards. Thus, we respectfully request that this court remand with instructions for Commerce to select a reasonable green tube surrogate value and to exclude green tube from the scope of the investigation and from the calculation of industry support. Thank you.